**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **PAMELA JENKINS** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No:_____ |
| **v.** ) | |
| ) | |
| ) | |
| **EXPERIAN INFORMATION** ) | |
| **SOLUTIONS, INC.** ) | |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Pamela Jenkins, by and through counsel, brings this Complaint against Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1.      Pamela Jenkins was vigilant, responsive, and assertive about the theft of her identity and takeover of a credit card account.  Unlike most victims, Mrs. Jenkins had a heads up that something was wrong with her Best Buy credit card.  Her credit card company notified her that her email address had been changed, and she knew that she had not requested that change. Realizing that the change of her email address on the account was a precursor to problems ahead, she sprung into action and called Citibank that same day to tell it that she did not request the change to her account, that she wanted to close the account and that she would destroy the credit card. That very same day she went down to her local Best Buy to notify them of the breach into her account, to pay off her outstanding balance in full, confirm that she wanted them to close the account, and destroyed the physical credit card.  At that point, she had done all that she could to notify Best Buy of the issue and to insulate herself from the impending fraud.  Unfortunately for

her, Best Buy failed to heed the warning, failed to effectively close her account, and allowed her closed account to be taken over by a fraudster. The fraudster was able to reopen the account, change the account information, purchase goods and run up a balance aggregating $2,597 that later grew to over $3,000 with additional fees, interest, and charges. The fraudster purchased a laptop computer from Best Buy and had it delivered to Fruita, Colorado. Despite ample warning of the potential for an account takeover and her demand that the account be closed after she paid it in full, Best Buy failed to take action and allowed a fraudster to defraud it. This was totally on Best Buy and the credit card issuer Citibank, yet they failed to accept responsibility and instead claimed that Mrs. Jenkins was liable for the fraudulent purchases and account takeover. Mrs. Jenkins was not about to pay for their negligence and failure to permanently close her account. Rather than correct and reverse this fraud, Citibank started dunning her for payment and reported to the credit bureaus that she had failed to pay her account. On February 22, 2023, Mrs. Jenkins went to her local police department in Leesburg, Virginia and reported the fraud. Mrs. Jenkins then pushed back and disputed this fraudulent account takeover with Experian. Experian told her that she needed to provide a valid police report, so she sent it the documentation that she received from the Town of Leesburg Police and explained the facts and history of the fraud and account takeover. Rather than accept the police report as Experian's own internal policies dictate, and delete the fraudulent account information, Experian responded back to Mrs. Jenkins telling her that the police report she provided did not meet the requirements of the FCRA for the following reasons: . . . . . There were no reasons provided and the rest of the letter was blank. The reason that Experian could not identify any missing information from the Leesburg Police Report is because her police report met all the requirements of a valid police report pursuant to Experian's policy and procedures. That report provided her identifying information including her full name, address and

2

phone number; the identity of the officer taking the report; the date the report was filed; the case number assigned to the report; the description of the offence, the amount of the fraud; the name of the law enforcement agency processing the report; and it was all on Leesburg Police letterhead that said: "The Town of Leesburg Police Department Report Verification Form."  Despite doing everything any consumer could possibly do to notify both the lender and Experian that this was a fraudulent account takeover after she had paid her outstanding bill in full and closed the account, Experian refused to follow its own policies and delete this obviously false and fraudulent account information.  In addition, the account level data maintained by Experian corroborated the key facts that Mrs. Jenkins had paid the account in full, notified Citibank of the fraud, and thereafter fraudulent charges appeared in the Experian balance history.  Beyond the extreme frustration and angst of having to deal with Experian and its failure to correct this fraud, she suffered a significant decrease in her credit score and consequently her ability to access her good credit.  Accordingly, Mrs. Jenkins requests an award of actual damages, statutory damages, punitive damages, attorney's fees and costs based upon Experian's violations of the Fair Credit Reporting Act 15 U.S.C. §1681 *et seq.*

## Parties

2.     Plaintiff Pamela Jenkins is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because she is an individual.  Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Pamela Jenkins.

3.     Defendant Experian Information Solutions, Inc. (hereinafter "Experian"), is a foreign limited liability company with a principal office address in California.  Experian is a consumer reporting agency, as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the

purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties. Experian regularly conducts these business activities in the Eastern District of Virginia by providing credit reports and other products to consumers and businesses in the Alexandria division of the Eastern District of Virginia.

## Jurisdiction & Venue

4.      This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681(p).  Venue is proper in this jurisdiction.  Plaintiff resides in the Alexandria Division of the Eastern District of Virginia and that forum is the forum most convenient for the adjudication of her claims.

## Factual Allegations

5.      Mrs. Jenkins has been dealing with fraud issues related to a Citibank/Best Buy credit card account that was taken over by a thief with charges made on the account without her authority or permission.  Mrs. Jenkins diligently took actions to protect herself, but she is left with an inaccurate Experian credit file through no fault of her own.

6.      On August 19, 2022, Mrs. Jenkins received an email that the email address for her Citibank/BestBuy account had been updated to an email address that she did not recognize and that she would no longer receive email communication about the account to her actual email address.

7.      On August 19, 2022, after receiving the email that her email address had been updated to an unrecognized email address, Mrs. Jenkins telephoned Citibank and told them that she did not request the change of the email address and that Citibank should close the account down immediately.

8.      Mrs. Jenkins confirmed the total balance owed on the account at that time, and she told Citibank that she was headed to Best Buy to payoff the balance and destroy the physical Citibank/BestBuy credit card.  She requested the account closed and wanted no further business with CitiBank/Best Buy because she did not feel they kept her credit line secured.

9.      That same day on August 19, 2022, Mrs. Jenkins went to her local Best Buy store in Leesburg, and she tendered a check in the amount of $667.48, which was the amount confirmed by Citibank to pay the account off and to close the account.  She requested the Best Buy employee to process the check now and to close the account immediately.  She stated that she would not have any association with Best Buy or CitiBank after closing this account.

10.      Later on August 19, 2022, Mrs. Jenkins received a text message from My Best Buy CitiAcct asking her if she attempted a $2,530 purchase at Acer Service Company on 8-19.  Mrs. Jenkins texted 2 which was the code to indicate NO.  She then received a text to open a fraud dispute with Best Buy Citi Fraud Department at 844-311-6031.  Mrs. Jenkins phoned CitiBank again to inform it once again of the fraud and the suspicious activity.

11.      Next, Mrs. Jenkins received texts on or about September 8, 2022, October 7, 2022, and November 17, 2022 that Citi Retail service mail about the account had been returned.  Mrs. Jenkins would contact CitiBank by the phone and continue to describe the problem, the fraud, and that she had never moved.  She asked them what she needed to do to make them listen to her.

12.      Prior to the fraud, the last four digits of the Citibank/Best Buy account was 7230.

13.      On or about December 17, 2022, Mrs. Jenkins received a letter from CitiBank Early Warning/ Fraud Verification Unit regarding an account with the last four digits 1844, which was a new account number with a $6,000.00 credit limit that had been upgraded to a Platinum Card

account.  She had never requested the upgrade and had instructed Citibank to close the account in August 2022 and thereafter.

14.     By February of 2023, after receiving harassing calls in the months prior about address updates and late charges, Mrs. Jenkins received a statement at her address for an unknown charge on the account that she had instructed CitiBank to close in August 2022. During her calls with CitiBank, it claimed that she had phoned in, reported the card lost or stolen, and made a request to send a new card to another address.  Citibank even changed the account number once again to the last four digits ending in 8422.

15.     Despite the fact that she had notified CitiBank of the fraudulent change to her email address, that the initial charge in August 2023 was fraudulent, that she wanted the account closed and that she notified the affinity card issuer (Best Buy) to close the account, CitiBank allowed a fraudster to obtain a new card, change the mailing address and increase the card to platinum with a $6,000 credit limit.

16.     Mrs. Jenkins took all the information and went to the local Best Buy store to demand an explanation.  The local store told her to go to the police station to file an identity theft report.

17.     On or about February 22, 2023, Mrs. Jenkins filed a police report with the Town of Leesburg Police Department.

18.     The police report that Mrs. Jenkins filed with Town of Leesburg Police Department (herein after the "Leesburg Police Report") met all of the requirements for an identity theft report as defined by the Fair Credit Reporting Act.

19.     The Leesburg Police Report contained Mrs. Jenkins' consumer identification information including name, address, and phone number.

20.     The Leesburg Police Report contained the name/and or badge number of the officer or law enforcement personnel that processed the report: Officer Wakeham.

21.     The Leesburg Police Report identified the date that the report was filed.

22.     The Leesburg Police Report identified the case number: 2022-32218.

23.     The Leesburg Police Report identified the violation and offense description: Identity Theft & Wire Fraud, theft of $2,687 on Best Buy Credit.

24.     The Leesburg Police Report identified the name of the law enforcement entity: Town of Leesburg Police.

25.     The Leesburg Police Report was in the form that is recognized as consistent for that jurisdiction entity because it was an official form with the seal of the Leesburg, Virginia police.

26.     Mrs. Jenkins contacted Experian to place a security freeze on her credit file and to dispute Experian's credit reporting related to the CitiBank Best Buy account.

27.     On March 10, 2023, Experian sent a letter to Mrs. Jenkins indicating that it had placed a security freeze on her Experian credit file.

28.     On March 14, 2023, Experian issued the results of the reinvestigation of her dispute of the CitiBank/Best Buy account. Experian indicated in the letter that "IF THE ACCOUNT WAS OPENED AS A RESULT OF IDENTITY THEFT, THE CREDIT GRANTOR MAY NOT KNOW HOW TO CONTACT YOU TO DISCUSS THIS MATTER. THE CREDIT GRANTOR REQUESTS THAT YOU CONTACT THEM DIRECTLY." This is boilerplate language from Experian of which there is no direct evidence that the statement is truthful. The present situation demonstrates the untruthfulness of the statement because Mrs. Jenkins had been communicating with CitiBank since August 2022 about the fraudulent activity and account takeover. CitiBank

would know how to contact Mrs. Jenkins if it needed to, which renders Experian's statement untruthful.

29.     Experian's March 14, 2023, letter went on to state that "The company that reported the information has certified to Experian that the information is accurate.  This item was not changed as a result of our processing of your dispute.  Please review the report for the details." The report went on to state that the CitiBank account was delinquent 30 days for January 2023, delinquent 60 days for February 2023, and 90 days delinquent for March 2023.

30.     As of the March 14, 2023 report, Experian's trended data proved that the account was paid in full in August 2022 that September 2022 had data reported of both a zero balance and no data, and no new data reported at all for October 2022.

31.     Experian's own account data that it included on the March 14, 2023 results of reinvestigation letter, confirmed that the credit limit on the account changed in August 2022 from $2,500 to $6,000.  Accordingly, Experian's own internal records confirmed and verified Mrs. Jenkins' factual assertions.  Experian could clearly see from its own records and data that she paid the account off in August 2022, that the balance was zero for a few months, that the credit line was increased and that new charges were added after she reported that she had paid off and closed the account.

32.     Mrs. Jenkins sent a written credit dispute letter to Experian dated April 25, 2023. The letter stated that she was following up to dispute the BestBuy/CitiBank account that was fraudulently reopened.  She told Experian that she had already informed Best Buy about the problem and closed the account.  She also noted that the payment history and balance demonstrated that the Citibank account was paid off with a zero balance before the fraudulent activity created a past due balance.  She explained to Experian that she had told all of this to Citibank and Best Buy

8

when the email address for the account had changed and they thereafter let the fraudulent charges happen. She went on to explain that she had gone to the Town of Leesburg Police Department, filed a police report, and received a report verification form. Mrs. Jenkins' credit dispute package included emails with Best Buy explaining what was the fraudulent email address and that she never buys anything from BestBuy online and that the fraudulent email address should be followed up on and copy of the Leesburg Police Report.

33.     In response to Mrs. Jenkins' credit dispute package that included the Leesburg Police Report, on May 3, 2023, Experian took what can only be described as a shocking and unconscionable turn of events by effectively calling Mrs. Jenkins a liar about the situation. A copy of the exact language from the response is copied to the complaint below with the full response included as Exhibit "A" to the Complaint:

> We are responding to your request that information in your personal credit report be blocked due to identity theft. Based on our review of your request and the information available to us, we have determined that either:
>
> - your request to block was made in error,
> - or, your request to block information was based on a material misrepresentation
> - or, you knowingly obtained or should have known that you obtained possession of goods, services, or moneys as a result of one or more of the transactions that you are seeking to block.
>
> Therefore, we are declining your request to block one or more of the items of information. If you have additional relevant information that indicates that the disputed item(s) resulted from identity theft, please contact us again and provide this information.

       *See* Exhibit "A."

34.     On May 3, 2023, Experian issued another letter that indicated that the dispute was "Still pending" with a projected completion date of May 30, 2023. This letter from Experian contradicted the previous letter that stated Mrs. Jenkins lied to Experian with a "material misrepresentation." At this point in time, Experian had updated the derogatory credit information to include a reporting of 120 days late for the reporting period April 2023.

35.     On May 4, 2023, Experian sent another letter to Mrs. Jenkins that rejected the Leesburg Police Report that she included with her April 25, 2023 dispute because it claimed it was not a valid identity theft report.  Experian's letter stated that the police report should include the following information:

> The identity theft report should include as many of the following elements as possible:
>
> - When the loss or theft of personal information occurred or when the fraud(s) occurred
> - How you discovered or learned of the theft
> - Any known information about the perpetrator
> - The names of creditors and account numbers involved in the theft
> - Name and/or badge number of the law enforcement personnel who processed the report and
> - The filing date and case number

Plaintiff attaches a copy of the full letter to the Complaint as Exhibit "B".

36.     Experian's May 4, 2023, response was not accurate because the Leesburg Police Report met all of the elements that Experian claimed were required.

37.     On May 23, 2023, Experian issued the results of the reinvestigation.  Experian refused to remove the derogatory account information that occurred after the account was taken over by an identity thief.  Experian ignored its own data that corroborated Mrs. Jenkins' factual assertions, and Experian ignored the Leesburg Police Report.  Experian simply relied on the outsourced ACDV process and the furnisher of the inaccurate credit information.

38.     On May 29, 2023, Mrs. Jenkins issued another credit dispute letter to Experian. The letter also included attachments that corroborated her factual allegations.  The letter noted that the account numbers for the BestBuy/CitiBank account were constantly changing and that these account numbers were related to the fraudulent takeover of the account.  She told Experian about how she received notification that her email address for the account was changed without her

authorization.  She included copies of the email to corroborate her statement.  Experian had no facts to refute this portion of the dispute letter.

39.     Experian also knew from the May 29, 2023 dispute letter that Mrs. Jenkins engaged in numerous telephone conversations with Best Buy related to the account takeover and the fraudulent charges as she informed them of the account takeover.  Experian had no facts to refute or dispute this portion of the dispute letter.

40.     Experian knew from the May 29, 2023, dispute letter that Mrs. Jenkins had paid the account in full in the amount of $667.48 in August of 2022 and asked that the account be closed in August of 2022.  Mrs. Jenkins included a copy of the cancelled check to corroborate these factual allegations.  Experian had no facts to dispute this portion of the dispute letter.

41.     Experian knew from the May 29, 2023 dispute letter that Mrs. Jenkins declined to authorized the charges on the account that occurred after she paid the account in full and requested that the account be closed.  She provided a copy of the text messages corroborating her factual assertion that she declined to authorize the charges.  Experian had no facts to dispute this portion of the dispute letter.

42.     Mrs. Jenkins provided correspondence from Best Buy that corroborated her factual allegations that someone had changed information related to the account address and had the credit line increased.  Experian's own account data confirmed that in August 2022 that the credit line was increased from $2,500 to $6,000.

43.     Experian knew from the May 29, 2023, dispute letter that Mrs. Jenkins went to the Leesburg Police department to report the identity theft and account takeover.  Mrs. Jenkins included a copy of a valid identity theft report *i.e.* the Leesburg Police Report.  Experian had no facts to dispute this portion of the dispute.  Experian also made no effort to contact the Town of

Leesburg police department, or the policer officer identified on the report (Officer Wakeham) to resolve any doubts or disputes it had about the authenticity of that report.

44.     Experian knew from the May 29, 2023, dispute letter that Mrs. Jenkins contacted Best Buy corporate and obtained documentation related to the fraudulent charges and learned that a MacBook was delivered to an address in Fruita, Colorado.  Experian knows from its data that Mrs. Jenkins had never lived in Colorado.  Experian had no facts to dispute this portion of the dispute.

45.     Mrs. Jenkins described to Experian how its actions damaged her and stated, "I've spent too many hours, days, and anxiety filled tears.  Someone needs to do their job and research this issue from the beginning."  Mrs. Jenkins concluded the letter by providing her complete identifying information including home number and cell phone number.  Experian never considered the effect of the inaccurate credit reporting on Mrs. Jenkins.

46.     On June 9, 2023, Experian issued another inaccurate and misleading letter regarding Mrs. Jenkins' May 29, 2023 dispute because it stated that the report does not reference identity theft.  Experian's letter was false and misleading because the report clearly stated "Offense: Identity Theft & Wire Fraud."  The second page specifically named the Best Buy account that the dispute letter referenced.

47.     Experian's June 9, 2023 letter also failed to identify any deficiencies with the Leesburg Police Report as the letter only stated:

> The identity theft report that you provided to us does not meet the guidelines established by the federal Fair Credit Reporting Act for the following reason(s):

Plaintiff attaches a copy of the letter to the Complaint as Exhibit "C."

48.     On June 23, 2023, Experian provided the results of the reinvestigation of the dispute.  Initially the response relied on Experian's boilerplate misrepresentation that "THE CREDIT GRANTOR MAY NOT KNOW HOW TO CONTACT YOU TO DISCUSS THIS MATTER.   THE CREDIT GRANTOR REQUESTS THAT YOU CONTACT THEM DIRECTLY."

49.     The June 23, 2023, reinvestigation response went on to state that the account would remain, but Experian updated the reporting to show that the account was 30 days delinquent January 2023, 60 days delinquent for February 2023, 90 days delinquent for March 2023, and 120 days delinquent for April 2023 with the account OK for May 2023 and closed in June 2023. Experian reported the inaccurate delinquencies despite all of the internal data that showed the account history was exactly as Mrs. Jenkins' dispute, she paid off the account in August 2022; an identity thief ran up charges that she did not authorize, and thereafter the account was marked paid and closed after Citibank decided to remove the charges from the account.

50.     Experian could have removed great inconvenience and aggravation for Mrs. Jenkins if it simply blocked the account after the first dispute.  Moreover, the damage to her credit file continues as now she has a derogatory payment history for an account that had charges that she never authorized.

51.     Experian has knowledge that the FCRA requires it to conduct an independent reinvestigation of the consumer's dispute to verify that the disputed information may remain on a consumer's credit report.

52.     Experian relied exclusively upon an outsourced, automated ACDV exchange process to support its verification of the disputed account file data.  Experian could have never

reviewed the dispute, the information provided by Mrs. Jenkins, the data in Experian's records, and the ACDV responses and verified the accuracy of the information that it reported.

53.    Experian also engaged in a systemic misrepresentation regarding the validity of the Town of Leesburg police report that Mrs. Jenkins provided to Experian.  Despite the clear information in the report, Experian misrepresented the contents as invalid without even bothering to contact the Town of Leesburg police department or Officer Wakeham.  These facts are egregious for Experian and show a reckless disregard for compliance with the FCRA as it relates to the rights of identity theft victims.

54.    Experian must admit that Experian never contacted the Town of Leesburg police department about the Leesburg Police Report.

55.    Experian knows that an ACDV exchange with a furnisher that merely provides a verification of the account data in its files, does not refute Mrs. Jenkins' dispute of account takeover and fraudulent charges thereafter.

56.    The FCRA requires a credit reporting agency to conduct a reasonable reinvestigation of consumer credit disputes.

57.    Experian does not implement a system of dispute reinvestigation that complies with the FCRA because it does not conduct an independent reinvestigation.  Experian simply instructs that an ACDV be issued that is often by an outsourced company that Experian claims in litigation it does not control and is a separate entity.

58.    Experian knows from case law that the FCRA requires more from Experian than simply issuing an ACDV, doing only a data conformity review and transferring its duties to the furnisher.

59.     Experian's own procedures instruct the dispute processors to delete a disputed trade line if the consumer provides a valid police report.

60.     Mrs. Jenkins was frustrated with Experian because they did not remove the derogatory credit reporting for the account.  She felt that she provided ample evidence that she did not make the charges, did not live in Colorado, and that no derogatory information should be reported on the credit file.  Experian's actions caused Mrs. Jenkins emotional distress, frustration, and inconvenience.

61.     Given the egregious manner that Experian handled Mrs. Jenkins' credit disputes, punitive damages are necessary to deter Experian and force it to change its reinvestigation practices.  Among the factors that support substantial punitive damages is the fact that Experian takes in immense revenue as a credit reporting agency, yet it refuses to allocate reasonable resources to process consumer disputes to ensure maximum possible accuracy of its data.

62.     According to Experian's website, the Consumer Services division contributes 20% to its global revenue.  In addition, Experian's website states that it had operating revenue of $4,861,000,000 in 2019.  *See* www.experianplc.com/investors/key-financial-data/.  Experian earns massive profits processing and selling consumer data, but it refuses to take consumer accuracy disputes seriously as required by §1681i of the FCRA and instead outsources those duties to poorly trained and supervised processors to save money and further increase corporate profits.

**COUNT I**
**Fair Credit Reporting Act**
**15 U.S.C. §1681i**

63.     Plaintiff incorporates paragraphs one (1) through sixty-two (62) as if fully stated herein.

64.     Defendant Experian has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA.  Experian is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681i by failing to comply with the enumerated statutory provisions when Mrs. Jenkins disputed the accounts as described in the factual averments.

65.     Experian's reinvestigation procedures do not comply with the stated statutory requirements of 15 U.S.C. §1681i(a)(1) through §1681i(a)(5).

66.     §1681i(a)(1)(A) provides that upon notice of the dispute that Experian is obligated to: "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

67.     §1681i(a)(2) obligates Experian to: "provide notification of the dispute to any person who provided any item of information in dispute."

68.     §1681i(a)(4) details the scope of Experian's reinvestigation under paragraph (1) and makes clear that Experian Information Solutions, Inc. "shall review and consider all relevant information submitted by the consumer…with respect to such disputed information."

69.     Finally, §1681i(a)(5) provides that after Experian has completed the forgoing steps and reinvestigation that if: "an item of information is found to be inaccurate or incomplete or cannot be verified," Experian must delete or modify the information.

70.     Experian violated 15 U.S.C. §1681i(a)(1) by its conduct related to Mrs. Jenkins' disputes that it received as identified in the factual averments.  With regards to the disputes, Mrs. Jenkins informed CitiBank/Best Buy of the account takeover and took significant actions to report the identity theft and account takeover.  Thereafter, Mrs. Jenkins informed Experian of the exact

problem and on multiple occasions provided a detailed description of the account takeover and supporting documentation.

71. As part of the reinvestigations, Experian negligently and recklessly ignored how its own data corroborated what Mrs. Jenkins told Experian about the account takeover.

72. As part of the reinvestigations, Experian negligently and recklessly ignored the Leesburg Police Report even though it met all the requirements of its own internal policies for validity and acceptance.

73. As part of the reinvestigations, Experian negligently and recklessly made false and defamatory statements that Mrs. Jenkins had made material misrepresentations about the account takeover and that she received the benefit of the transactions, and that the Citibank did not know how to contact her. All of Experian's false statements support the imposition of substantial punitive damages.

74. Based upon documents reviewed to date, and Experian's own disclosure to Mrs. Jenkins as to what it did do, Experian simply issued an ACDV to Citibank and did not conduct any other reinvestigation.

75. Based upon information and belief, the only factual basis that Experian had at the time of Mrs. Jenkins' dispute reinvestigations were the ACDV responses back from Citibank.

76. This type of reinvestigation is a reckless and/or negligent reinvestigation because Experian failed to conduct an independent reinvestigation as required by the FCRA. In the disputes, Mrs. Jenkins identified the facts supporting the account take over, the Leesburg Police Report, and corroborating documents. No reasonable reinvestigation would have failed to consider the facts, the police report, and the corroboration of her statements from Experian's own internal data.

77.     Experian sells products that claim to track and discover fraudulent accounts and transactions. Experian does not use these available resources as part of its fraud consumer credit dispute reinvestigations.

78.     The FCRA requires that in conducting its reinvestigation under 15 U.S.C. §1681i(a)(1)(A) that a credit reporting agency must conduct the reinvestigation after receiving the consumer's credit dispute letter and unless it is able to verify said information Experian must delete the disputed account from the credit file as stated in 15 U.S.C. §1681i(a)(5)(A):

> In general If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or **cannot be verified**, the consumer reporting agency shall- (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer. 15 U.S.C. §1681i(a)(5)(A) (emphasis added)

79.     According to Black's Law Dictionary, the ordinary meaning of verify is, "to prove to be true; to confirm or establish the truth or truthfulness; to authenticate."

80.     Based upon the circumstances, Experian knew that there was a problem with the data on Mr. Jenkins' credit file, knew that CitiBank account had been taken over by an identity thief, and that Mrs. Jenkins had filed the Leesburg Police Report.

81.     Rather than undertake a more reasonable and detailed reinvestigation, Experian likely contracted for an outsourced third-party processor to issue a coded dispute to Citibank with Experian's computers "verifying" the information with no meaningful reinvestigation after receiving the ACDV response from the furnisher of the information.

82.     Experian also violated 15 U.S.C. §1681i(a)(4) after receiving Mrs. Jenkins disputes because it failed to review and consider the dispute information provided by Mrs. Jenkins including

the representations that an identity thief took over the account, that she had filed the Leesburg Police Report, and she had never lived in Colorado.

83.     Because Experian uses outsourced third-party processors located in Chile and other countries, Experian incentivizes low-cost review at the expense of detailed review and consideration of the specifics of the disputes.  These processors are not provided with adequate training and supervision so that they can execute the functions of §1681i(a)(4) and (5).

84.     Rather than allow these processors to review and consider the consumer's dispute package together with the furnisher's ACDV response and make the required determination of §1681i(a)(5)(A), Experian automates that process and simply sends the ACDV response to its computer for automated updating and processing.

85.     As a result, Experian fails to conduct the required determination mandated by §1681i(a)(5)(A) and instead simply parrots whatever response the furnisher provides back to it in the ACDV exchange.

86.     Experian negligently and recklessly implemented a system with a total disregard for the requirements of §1681i(a)(5).  Rather than allow these processors to review and consider the consumer's dispute package together with the furnisher's ACDV response and make the required determination of §1681i(a)(5)(A), Experian automates that process and simply sends the ACDV response to its computer for automated updating and processing.

87.     Had the Experian processors been properly trained and supervised, they would have followed the policy concerning police reports and deleted the disputed trade line information.

88.     Experian fails to conduct the required determination mandated by §1681i(a)(5)(A) and instead simply parrots whatever response the furnisher provides back to it in the ACDV

exchange without reasonably considering what information it had in front of it and what it could see was the cause of the disputed data.

89.     If Experian determined that the information was too difficult to verify for purposes of the dispute, the proper response is to delete the information as unverifiable.  Instead, Experian defaults to the furnisher's ACDV response no matter how ridiculous or inconsistent.

90.     Mrs. Jenkins suffered actual damages including time spent addressing the problem, improper denial of access to credit, inability to use her credit, inconvenience, as well as emotional distress damages with attendant physical manifestations.  In addition, punitive damages are necessary based upon Experian's reckless disregard for reviewing information submitted by consumers and issuing ACDVs.

91.     Punitive damages are also supported by Experian's misrepresentations regarding the account takeover and false assertion that Citibank did not know how to contact Mrs. Jenkins.

92.     Based upon information and belief and documents reviewed in other cases, Experian has a pattern and practice of failing to require the steps of a reasonable reinvestigation as required by the FCRA to circumvent its duties under the FCRA to conduct reinvestigations and keep the costs of dispute reinvestigations low.

93.     Experian has been on notice of its failure to reinvestigate properly by virtue of other cases and court opinions, and only the imposition of substantial punitive damages will change Experian's policies.  Experian also knows that outsourced automated data conformity reviews do not comply with its grave responsibilities to assure maximum possible accuracy of consumer credit information.

## COUNT II
### Fair Credit Reporting Act
### 15 U.S.C. §1681e(b)

94.     Plaintiff incorporates paragraphs one (1) through ninety-three (93) as if fully stated herein.

95.     Defendant Experian has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA.  Experian is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the plaintiff's credit report.

96.     Experian willfully and/or negligently violated the Fair Credit Reporting Act at 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information reported about Mrs. Jenkins when it provided a credit report to Capital One, Goldman Sachs Group, and JP Morgan Card.  Discovery is necessary related to additional occasions in which Experian issued an inaccurate credit report.

97.     Experian's publishing of the inaccurate information was a substantial factor in the stress and strain from knowing that she was unable to qualify for credit on terms and in the manner requested.  Experian allowed the inaccurate, misleading, derogatory CitiBank account information to remain on Mrs. Jenkins' credit report and included it in any credit information that her creditors had ordered from Experian.

98.     Mrs. Jenkins suffered actual damages including time spent addressing the problem, inconvenience, improper denial of access to credit, inability to obtain refinance of a mortgage, as well as emotional distress damages with attendant physical manifestations.  In addition, punitive

damages are necessary based upon Experian's reckless disregard for reviewing information submitted by consumers and issuing ACDVs.

99.     Punitive damages are necessary because Experian has implemented a system and process that it knows results with inaccurate credit reports being sold to furnishers because Experian fails to invest the resources into enacting procedures to protect consumers or properly supervising these processors to ensure that they are carrying out and following Experian's existing procedures. Experian has implemented procedures to allow inaccurate data to remain in its system that cannot be verified if reinvestigated properly.  Only punitive damages can curb this type of conduct that operates in reckless disregard for accurate credit reports.

### Prayer for Relief

Wherefore, the Plaintiff prays that the Court award the following relief:

a)     Actual damages based upon Defendant's violations of the FCRA;

b)     statutory damages against Defendant's based upon violations of the FCRA;

c)     punitive damages based upon the violations of the FCRA

d)     costs and reasonable attorneys' fees incurred by the Plaintiff;

e)     prejudgment interest

f)     all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury as to all issues against all defendants.

Respectfully submitted,
Pamela Jenkins

By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11862 Sunrise Valley Dr. Suite 201
Reston, Virginia 20191
(571) 313-0412
Fax:(571) 313-0582